Peter C. Perez, Esq.
**LAW OFFICE OF PETER C. PEREZ**
Suite 802, DNA Building
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone No. (671) 475-5055
Facsimile No. (671) 477-5445
E-Mail: pcperez@perezlawguam.com
E-Service: perezlawguam@gmail.com

*Attorney for Plaintiff*

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| PIGM,<br><br>                           Plaintiff,<br><br>      vs.<br><br>HEE K. CHO and DOES 1 through 20,<br><br>                      Defendants. | CIVIL CASE NO. _____24-00016_____<br><br><br>**COMPLAINT AND DEMAND<br>FOR JURY TRIAL** |

Plaintiff, PIGM ("PIGM") by and through its attorneys, for its claims against the Defendants pleads and alleges as follows:

### JURISDICTION

1. Jurisdiction is founded on diversity of citizenship pursuant to 28 USC § 1332. The amount in controversy exclusive of interest and costs exceeds $75,000.00 and this action involves PIGM who is a citizen or subject of the Republic of Korea and Defendants who are citizens of Guam. PIGM's damages, excluding punitive damages, exceed $1,100,000.00 (ONE MILLION ONE HUNDRED THOUSAND US DOLLARS).

### PARTIES

2. At all relevant times herein, Plaintiff PIGM was and is a corporation organized, existing, and having its principal place of business in the Republic of Korea.

3. At all relevant times herein, HEE K. CHO ("CHO") was and is an adult individual and a resident of Guam.

P-0099(7014)stb

**4.** DOE DEFENDANTS 1 through 5 are affiliates, subsidiaries, principals, employers, partners, joint venturers, agents, or other related entities owned by, controlled by, doing business with, and/or aiding, abetting, and/or civilly conspiring with CHO, and/or who are directly or vicariously liable for PIGM's damages for the acts and omissions complained of herein.

**5.** DOE DEFENDANTS 6-15 are individuals or entities that are liable in some manner, in whole or in part, for PIGM's damages. PIGM is presently unaware of their true names, capacities, and identities and PIGM therefore sues and assert its claims herein against these defendants by such fictitious names. PIGM specifically reserves the right to amend this Complaint when their identities are determined.

**6.** DOE DEFENDANTS 16-20 are insurance companies authorized to do business in Guam which had issued policies of insurance to CHO and/or DOE DEFENDANTS 1-15, which were in full force and effect at all relevant times herein. Said policies covered CHO and/or DOE DEFENDANTS 1-15's acts and omissions that directly and proximately caused the injuries, harm, and damages to PIGM.

## **GENERAL ALLEGATIONS**

**7.** At all relevant times herein, CHO was a developer and real property owner who owned real properties, resorts, hotels, and buildings including in Guam and the CNMI including the Rota Resort and Golf, the Guam Holiday Resort, Alupang Beach Tower, the Garden Villa, Airport Mai'ana Plaza, and other properties.

**8.** In early 2022, CHO contacted Sunghyun Jeong ("JEONG"), the Director of PIGM, about PIGM along with other investors purchasing golf courses in Guam, stating that he had and could arrange a sale if PIGM was interested.

9. JEONG had known CHO for approximately ten (10) years. JEONG had worked as a Korea sales representative for Rota Resort and Golf which was owned by CHO. JEONG had been working in the golf industry in Korea for over twenty (20) years.

10. CHO emphasized to JEONG that CHO had relationships with the Japanese owners and companies of golf properties in Guam, that he was known in the industry, that he had local knowledge of the golf tourism market in Guam and Rota, and that he was suited to negotiate a sale. CHO told JEONG that none of the Guam golf courses would talk to JEONG, PIGM, or any of their potential investors directly or agree to any sale to them, but that because of CHO's relationships and reputation, he could negotiate a sale. CHO expressed to JEONG, that direct communications between JEONG/PIGM and Guam golf courses would jeopardize any potential sale. CHO was adamant that only he should communicate with Guam golf properties sellers and negotiate any sale terms.

11. CHO represented to JEONG that CHO would negotiate the terms of a sale for a Guam golf property, and that PIGM along with other possible investors would then purchase the property under the same terms and conditions CHO negotiated with the Guam golf course seller.

12. CHO and JEONG agreed that PIGM, alone, or along with other potential investors would purchase the property.

### CHO negotiated the sale of STARTS GUAM GOLF RESORT

13. Pursuant to CHO's representations to JEONG/PIGM and the agreement between CHO and JEONG/PIGM that CHO would negotiate the terms of a sale with a Guam golf course on JEONG/PIGM'S behalf, in or around April 2022, CHO negotiated with STARTS GUAM GOLF RESORT, INC. ("STARTS") for the purchase Starts Guam Golf

Resort, a golf course and resort property located at 2991 Rte. 3, Yigo Guam ("PROPERTY"), with CHO as Buyer "Nominee/Assignee".

14. As a result of CHO's negotiations with STARTS, documents were exchanged by and between CHO and STARTS with CHO as Buyer Nominee/Assignee including:

    a. April 12, 2022, Offer from CHO as Buyer Assignee/Nominee
    b. April 15, 2022, Confidentiality and Non-Disclosure Agreement
    c. April 26, 2022, STARTS Counteroffer 001
    d. April 28, 2022, CHO Counteroffer 002
    e. April 29, 2022, STARTS Counteroffer 003
    f. May 2, 2022, CHO acceptance of STARTS Counteroffer 003

15. Pursuant to the May 2, 2022, CHO acceptance of STARTS Counteroffer 003, CHO and STARTS entered into a binding contract ("TRUE AGREEMENT").

16. Under the terms of the TRUE AGREEMENT, STARTS agreed to sell the PROPERTY to CHO as Buyer Nominee/Assignee for the price of $19,750,000.00 ("TRUE PURCHASE PRICE") with a closing date of September 30, 2022 ("TRUE CLOSING DATE").

***CHO concealed the TRUE AGREEMENT, the TRUE PURCHASE PRICE, and the TRUE CLOSING DATE from JEONG/PIGM, and misrepresented the terms of the STARTS PROPERTY sale to JEONG/PIGM.***

17. On or about May 7, 2022, CHO misrepresented to JEONG/PIGM that STARTS agreed to sell the PROPERTY for the price of $23,250,000.00 and that closing of the sale would be on August 31, 2022.

18. CHO did not disclose to and concealed from JEONG/PIGM the TRUE AGREEMENT.

19. CHO did not disclose to and concealed from JEONG/PIGM the TRUE PURCHASE PRICE of $19,750,000.00.

20. CHO did not disclose to and concealed from JEONG/PIGM the TRUE CLOSING DATE of September 30, 2022.

21. On or about May 7, 2022, CHO presented to JEONG/PIGM a Commercial Property Purchase Agreement and Joint Escrow Instructions, with CHO as "Seller" and PIGM as "Buyer" for the PROPERTY, which CHO misrepresented to JEONG/PIGM was the deal being offered by STARTS and contained the same terms and conditions that CHO negotiated with STARTS ("FRAUDULENT AGREEMENT").

22. JEONG/PIGM asked CHO to arrange for JEONG/PIGM to meet STARTS directly regarding the deal.

23. CHO refused to arrange the requested meeting, reiterated that this was the deal being offered by STARTS, and told JEONG/PIGM that having direct contact with STARTS would jeopardize the deal.

24. JEONG/PIGM asked CHO to provide to JEONG/PIGM CHO's deal with STARTS.

25. CHO reiterated to JEONG/PIGM that the deals were the same, did not provide his deal with STARTS as requested, but instead denied JEONG/PIGM's repeated requests for disclosure of CHO's deal with STARTS.

26. CHO knew JEONG/PIGM was eager to purchase a Guam golf course, was concerned about competing buyers, and that time for JEONG/PIGM was of the essence.

***CHO induced JEONG/PIGM to enter into the FRAUDULENT AGREEMENT, to enter into related agreements, and make payments toward the FRAUDULENT PURCHASE PRICE for the FRAUDULENT CLOSING DATE.***

27. CHO presented to JEONG/PIGM the FRAUDULENT AGREEEMNT which contained the following misrepresentations which CHO knew to be false:

   a. May 7, 2022, Commercial Property Purchase Agreement and Joint Escrow Instructions for the purchase of the PROPERTY contained terms and conditions different from the TRUE PURCHASE AGREEMENT.

b. May 7, 2022, Commercial Property Purchase Agreement and Joint Escrow Instructions for the purchase of the PROPERTY contained the false purchase price of $23,250,000 ("FRAUDULENT PURCHASE PRICE").

c. May 7, 2022, Commercial Property Purchase Agreement and Joint Escrow Instructions for the purchase of the PROPERTY contained the false closing date of August 31, 2022 ("FRAUDULENT CLOSING DATE")

28. CHO used the FRAUDULENT AGREEMENT and concealed the TRUE AGREEMENT, the TRUE PURCHASE PRICE, and the TRUE CLOSING DATE, to induce JEONG/PIGM to enter into the FRAUDULENT AGREEMENT, to enter into other agreements with CHO based upon the FRAUDULENT AGREEMENT, and to transmit payments to CHO in payment of the FRAUDULENT PURCHASE PRICE for the FRAUDULENT CLOSING DATE.

29. In justifiable reliance on CHO's misrepresentations that the FRAUDULENT AGREEMENT contained the same terms and conditions that CHO negotiated with STARTS, JEONG/PIGM:

a. On or about May 7, 2022, executed and entered into the FRAUDULENT AGREEMENT with CHO.

b. On or about May 20, 2022, wired to CHO the sum of $150,000 toward the FRAUDULENT PURCHASE PRICE and for the FRAUDULENT CLOSING DATE.

c. On or about June 16, 2022, entered into with CHO the Starts Guam Golf Resort Business Agreement ("BUSINESS AGREEMENT").

d. On or about June 16, 2022, entered into with CHO the Supply Contract ("SUPPLY CONTRACT").

e. On or about June 22, 2022, wired to CHO the sum of $250,000 toward the FRAUDULENT PURCHASE PRICE and for the FRAUDULENT CLOSING DATE.

30. Had CHO disclosed to JEONG/PIGM the TRUE AGREEMENT, the TRUE PURCHASE PRICE, and the TRUE CLOSING DATE, and had JEONG/PIGM known about CHO'S misrepresentations, JEONG/PIGM would not have:

   a. On or about May 7, 2022, executed and entered into the FRAUDULENT AGREEMENT with CHO.

   b. On or about May 20, 2022, wired to CHO the sum of $150,000 toward the FRAUDULENT PURCHASE PRICE and for the FRAUDULENT CLOSING DATE.

   c. On or about June 16, 2022, entered into with CHO the Starts Guam Golf Resort Business Agreement ("BUSINESS AGREEMENT").

   d. On or about June 16, 2022, entered into with CHO the Supply Contract ("SUPPLY CONTRACT").

   e. On or about June 22, 2022, wired to CHO the sum of $250,000 toward the FRAUDULENT PURCHASE PRICE and for the FRAUDULENT CLOSING DATE.

***CHO intentionally misrepresented the true agreement documents between CHO and STARTS by transmitting to JEONG/PIGM via wire false, fraudulent, and/or forged agreement documents purportedly between CHO and STARTS (collectively "FORGED DEAL DOCUMENTS").***

31. JEONG/PIGM continued to request from CHO that he disclose his deal documents with STARTS to PIGM.

32. After repeated requests by JEONG/PIGM, CHO on or about June 28, 2022, transmitted via email to JEONG/PIGM the following documents which CHO misrepresented were CHO's deal documents with STARTS, and each of which contained the forged signature and misappropriated identity of STARTS's President, HANAKO HATA ("HATA"):

   a. May 2, 2022, Commercial Property Purchase Agreement and Joint Escrow Instructions for the purported purchase of the PROPERTY ("FORGED DEAL DOCUMENT 1)

   b. May 2, 2022, Addendum No. 001 (FORGED DEAL DOCUMENT 2)

c. May 2, 2022, Addendum No. 002 (FORGED DEAL DOCUMENT 3)

d. May 2, 2022, Addendum No. 003 (FORGED DEAL DOCUMENT 4)

e. May 2, 2022, Addendum No. 004 (FORGED DEAL DOCUMENT 5)

33. On or about July 10, 2023, HATA wrote to JEONG advising the [FORGED DEAL DOCUMENTS] "never formed part of the transaction contemplated between [STARTS] and [CHO] … Moreover, none of the signatures contained on the [FORGED DEAL DOCUMENTS] are authentic signatures of [HATA] nor has [HATA] authorized anyone to execute those documents on her behalf."

34. Prior to July 10, 2023, JEONG/PIGM was unaware that the FORGED DEAL DOCUMENTS were false, fraudulent, and/or forged.

35. When he transmitted the FORGED DEAL DOCUMENTS to JEONG/PIGM on or about June 28, 2022, CHO used the FORGED DEAL DOCUMENTS in furtherance of his concealment of the TRUE AGREEMENT, the TRUE PURCHASE PRICE, the TRUE CLOSING DATE, and in furtherance of and recapitulation of his misrepresentations to JEONG/PIGM of the FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE *inter alia* by:

- Reiterating the terms of the FRAUDULENT AGREEMENT
- Reiterating the FRAUDULENT PURCHASE PRICE of $23,250,000.00
- Reiterating the FRAUDUENT CLOSING DATE of August 31, 2022

***CHO used the FORGED DEAL DOCUMENTS in furtherance of CHO's concealment and intentional misrepresentations to induce JEONG/PIGM to make further payments toward the FRAUDULENT PURCHASE PRICE for the FRAUDULENT CLOSING DATE, and to enter into an Indemnity Agreement with CHO.***

36. When he transmitted the FORGED DEAL DOCUMENTS to JEONG/PIGM on or about June 28, 2022, JEONG/PIGM justifiably relied upon CHO's misrepresentations that the FORGED DEAL DOCUMENTS were true, authentic, and formed the agreement

between CHO and STARTS for the purchase of the PROPERTY, and reinforced JEONG/PIGM's reliance on CHO that the FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE were true and correct.

37. In justifiable reliance on CHO's misrepresentations that the FORGED DEAL DOCUMENTS were true, authentic, and formed the agreement between CHO and STARTS for the purchase of the PROPERTY, and JEONG/PIGM's reliance on CHO that FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE were true and correct was reconfirmed by the FORGED DEAL DOCUMENTS and ongoing concealment and misrepresentations by CHO, JEONG/PIGM were induced to:

    a. On or about August 18, 2022, wired to CHO the sum of $400,000.00 toward the FRAUDULENT PURCHASE PRICE and for the FRAUDULENT CLOSING DATE.

    b. On or about September 19, 2022, entered into with CHO Addendum A to the FRAUDULENT AGREEMENT.

    c. On or about September 19, 2022, wired to CHO the sum of $100,000.00 toward the FRAUDULENT PURCHASE PRICE and for the FRAUDULENT CLOSING DATE.

    d. On or about September 20, 2022, wired to CHO the sum of $100,000.00 toward the FRAUDULENT PURCHASE PRICE and for the FRAUDULENT CLOSING DATE.

    e. On or about September 23, 2022, wired to CHO the sum of $100,000.00 toward the FRAUDULENT PURCHASE PRICE and for the FRAUDULENT CLOSING DATE.

    f. On or about October 3, 2022, entered into with CHO Addendum B to the FRAUDULENT AGREEMENT.

g. On or about November 14, 2022, entered into with CHO Addendum C to the FRAUDULENT AGREEMENT.

h. In or around January 2023 entered into with CHO an Indemnification Agreement ("INDEMNIFICATION AGREEMENT").

38. Had CHO timely disclosed to JEONG/PIGM the TRUE AGREEMENT, the TRUE PURCHASE PRICE, and the TRUE CLOSING DATE; and had JEONG/PIGM known about CHO'S misrepresentations; and had JEONG/PIGM known the FORGED DEAL DOCUMENTS were false, fraudulent and forged, JEONG/PIGM would not have:

a. On or about August 18, 2022, wired to CHO the sum of $400,000.00 toward the FRAUDULENT PURCHASE PRICE and for the FRAUDULENT CLOSING DATE.

b. On or about September 19, 2022, entered into with CHO Addendum A to the FRAUDULENT AGREEMENT.

c. On or about September 19, 2022, wired to CHO the sum of $100,000.00 toward the FRAUDULENT PURCHASE PRICE and for the FRAUDULENT CLOSING DATE.

d. On or about September 20, 2022, wired to CHO the sum of $100,000.00 toward the FRAUDULENT PURCHASE PRICE and for the FRAUDULENT CLOSING DATE.

e. On or about September 23, 2022, wired to CHO the sum of $100,000.00 toward the FRAUDULENT PURCHASE PRICE and for the FRAUDULENT CLOSING DATE.

f. On or about October 3, 2022, entered into with CHO Addendum B to the FRAUDULENT AGREEMENT.

g. On or about November 14, 2022, entered into with CHO Addendum C to the FRAUDULENT AGREEMENT.

h. In or around January 2023 entered into with CHO an Indemnification Agreement ("INDEMNIFICATION AGREEMENT").

39. The total amount of payments CHO induced PIGM to wire totaled 1.1 million USD.

***CHO intentionally misrepresented to PIGM that PIGM's funds would be deposited into escrow, but Cho instead kept all or some of the funds for himself.***

**40.**     Prior to receiving the 1.1 million USD from PIGM, CHO promised and represented to PIGM that the funds would be deposited into an escrow account.

**41.**     PIGM's transmission of the 1.1 million USD to CHO was in reliance on these promises and misrepresentations, along with PIGM's reliance on the CHO's misrepresentations, concealment of true facts, and frauds as described and pled in this Complaint.

**42.**     Contrary to CHO's promises and representations to PIGM, CHO did not deposit the 1.1 million USD into an escrow account but instead kept all or some of the funds for himself.

***CHO used email, telephonic communications, and/or US mail in the commission of CHO's misconduct.***

**43.**     CHO used email, telephonic communications, and/or US mail regarding:

a.   Concealment of the TRUE AGREEMENT

b.   Concealment of the TRUE PURCHASE PRICE

c.   Concealment of the TRUE CLOSING DATE

d.   Drafting, negotiating, communicating regarding, transmitting, and/or obtaining PIGM's signature on, the FRAUDULENT AGREEMENT

e.   Drafting, negotiating, communicating regarding, transmitting, the FRAUDULENT PURCHASE PRICE

f.   Drafting, negotiating, communicating regarding, transmitting, the FRAUDULENT CLOSING DATE

g.   The forgery of HATA's signature on FORGED DEAL DOCUMENT 1

h.   The forgery of HATA's signature on FORGED DEAL DOCUMENT 2

i.   The forgery of HATA's signature on FORGED DEAL DOCUMENT 3

j.   The forgery of HATA's signature on FORGED DEAL DOCUMENT 4

k.   The forgery of HATA's signature on FORGED DEAL DOCUMENT 5

l.   The use, without lawful authority, of HATA's identity on FORGED DEAL DOCUMENT 1

m. The use, without lawful authority, of HATA's identity on FORGED DEAL DOCUMENT 2

n. The use, without lawful authority, of HATA's identity on FORGED DEAL DOCUMENT 3

o. The use, without lawful authority, of HATA's identity on FORGED DEAL DOCUMENT 4

p. The use, without lawful authority, of HATA's identity on FORGED DEAL DOCUMENT 5

***CHO used email, telephonic communications, US mail, and/or international banking in the inducement of 1.1 million USD of payments from PIGM.***

**44.** CHO used email, telephonic communications, US mail, and/or international banking in the inducement of 1.1 USD of payments by PIGM to CHO.

**45.** Each of the following payments CHO induced PIGM to make were the result of CHO's wrongful use of email, telephonic communications, US mail, and/or international banking:

a. May 20, 2022, payment in the amount of $150,000.00

b. June 22, 2022, payment in the amount of $250,000.00

c. August 18, 2022, payment in the amount of $400,000.00

d. September 19, 2022, payment in the amount of $100,000.00

e. September 20, 2022, payment in the amount of $100,000.00

f. September 23, 2022, payment in the amount of $100,000.00

***CHO's misconduct was illegal.***

**46.** CHO's misconduct was illegal and appears to have violated criminal laws, including but not limited to:

- Theft: 9 GCA § 43.20[1]

---

[1] Theft; Defined & Punishment Classified.

(Footnote continues on following page.)

- Theft by Deception: 9 GCA § 43.35[2]
- Theft of Property Held in Trust: 9 GCA § 43.60[3]
- Forgery: 9 GCA § 46.10[4]

---

(Footnote continued from previous page)

(a) Theft constitutes a felony of the second degree if the amount involved exceeds One Thousand Five Hundred Dollars ($1,500) or if the property stolen is a bus, truck, automobile, aircraft, motorcycle, or motor boat, or in the case of theft by receiving stolen property, if the defendant is in the business of buying and selling stolen property.

9 GCA § 43.30. Theft of Property; Defined.

(a) A person is guilty of theft if he unlawfully takes or obtains or exercises unlawful control over, movable property of another with intent to deprive him thereof.

[2] Theft by Deception; Defined.

(a) A person is guilty of theft if he intentionally obtains property of another by deception. A person deceives if he intentionally:

(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;

(2) prevents another from acquiring information which would affect his judgment of a transaction;

(3) fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship; or

[3] § 43.60. Theft of Property Held in Trust; Defined.

A person who in the course of business obtains property upon agreement, or subject to a known legal obligation, to make specified payment or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property as his own and fails to make the required disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the defendant's failure to make the required payment or disposition.

[4] Forgery; Defined & Punished.

(a) A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, he:

(1) falsely makes a written instrument by drawing a complete written instrument in its entirety, or an incomplete written instrument, which purports to be an authentic creation of its ostensible maker, but

(Footnote continues on following page.)

- Federal Wire Fraud: 18 USC § 1343[5]
- Federal Aggravated Identity Theft: 18 U.S.C. § 1028A[6]

**47.** In committing the scheme, and in inducing and extracting the referenced contracts, agreements, and payments from PIGM, CHO used or caused to be used interstate and/or international wire communications.

---

(Footnote continued from previous page)

which is not either because the ostensible maker is fictitious or because, if real, he did not authorize the making or drawing thereof;

(2) falsely completes a written instrument by transforming through adding, inserting or changing matter, an incomplete written instrument into a complete one, without the authority of anyone entitled to grant it, so that the complete written instrument falsely appears or purports to be in all respects an authentic creation of its ostensible maker or authorized by him;

(3) falsely alters a written instrument by change, without authorization by anyone entitled to grant it, of a written instrument, whether complete or incomplete, by means of erasure, obliteration, deletion, insertion of new matter, transposition of matter, or in any other manner, so that the instrument so altered appears or purports to be in all respects an authentic creation of its osten sible maker or authorized by him;

(4) induces another by deception to sign or execute a written instrument which is not what it has been represented to be; or

(5) utters any written instrument which he knows to be forged in a manner specified in Paragraphs (1), (2), (3) or (4).

[5] 18 USC § 1343 federal wire fraud:

Whoever, having devised or intending to devise any <u>scheme or artifice to defraud</u>, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice…

[6] 18 USC § 1028A federal aggravated identity theft

Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person…

## FIRST CAUSE OF ACTION: FRAUDULENT CONCEALMENT

**48.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

**49.** CHO actively concealed from PIGM the TRUE AGREEMENT and/or actively prevented PIGM from discovering the TRUE AGREEMENT.

**50.** PIGM did not know the terms and conditions of the TRUE AGREEMENT.

**51.** CHO intended to deceive PIGM by concealing the TRUE AGREEMENT and/or preventing PIGM from discovering the TRUE AGREEMENT.

**52.** PIGM reasonably relied upon CHO's deception.

**53.** PIGM was harmed by CHO's deception including *inter alia*:

    a. By being induced into and paying 1.1 million USD to CHO.

    b. By being induced into entering into the FRAUDULENT AGREEMENT.

    c. By being induced to entering into the BUSINESS AGREEMENT.

    d. By being induced to entering into with CHO the SUPPLY CONTRACT.

    e. By being induced into entering into the INDEMNIFICATION AGREEMENT.

**54.** As a proximate result of Cho's fraudulent concealment, PIGM has suffered damages and losses in amounts subject to proof at trial.

## SECOND CAUSE OF ACTION: FRAUDULENT CONCEALMENT

**55.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

**56.** CHO actively concealed from PIGM the TRUE PURCHASE PRICE and/or actively prevented PIGM from discovering the TRUE PURCHASE PRICE.57.

**57.** PIGM did not know the terms and conditions of the TRUE PURCHASE PRICE.

**58.** CHO intended to deceive PIGM by concealing the TRUE PURCHASE PRICE and/or preventing PIGM from discovering the TRUE PURCHASE PRICE.

**59.** PIGM reasonably relied upon CHO's deception.

**60.** PIGM was harmed by CHO's deception including *inter alia*:

    a. By being induced into and paying 1.1 million USD to CHO.

    b. By being induced into entering into the FRAUDULENT AGREEMENT.

    c. By being induced to entering into the BUSINESS AGREEMENT.

    d. By being induced to entering into with CHO the SUPPLY CONTRACT.

    e. By being induced into entering into the INDEMNIFICATION AGREEMENT.

**61.** As a proximate result of Cho's fraudulent concealment, PIGM has suffered damages and losses in amounts subject to proof at trial.

### THIRD CAUSE OF ACTION: FRAUDULENT CONCEALMENT

**62.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

**63.** CHO actively concealed from PIGM the TRUE CLOSING DATE and/or actively prevented PIGM from discovering the TRUE CLOSING DATE.

**64.** PIGM did not know the terms and conditions of the TRUE CLOSING DATE.

**65.** CHO intended to deceive PIGM by concealing the TRUE CLOSING DATE and/or preventing PIGM from discovering the TRUE CLOSING DATE.

**66.** PIGM reasonably relied upon CHO's deception.

**67.** PIGM was harmed by CHO's deception including *inter alia*:

    a. By being induced into and paying 1.1 million USD to CHO.

    b. By being induced into entering into the FRAUDULENT AGREEMENT.

    c. By being induced to entering into the BUSINESS AGREEMENT.

    d. By being induced into entering into with CHO the SUPPLY CONTRACT.

    e. By being induced into entering into the INDEMNIFICATION AGREEMENT.

**68.** As a proximate result of Cho's fraudulent concealment, PIGM has suffered damages and losses in amounts subject to proof at trial.

## FOURTH CAUSE OF ACTION: FRAUD

**69.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

**70.** CHO misrepresented to PIGM the terms and conditions of the TRUE AGREEMENT and/or actively prevented PIGM from discovering the terms and conditions of the TRUE AGREEMENT.

**71.** In presenting to PIGM the FRAUDULENT AGREEMENT, CHO knew that the terms and conditions of the FRAUDULENT AGREEMENT were different from the TRUE AGREEMENT.

**72.** CHO intended to induce PIGM's reliance.

**73.** PIGM justifiably relied upon CHO's misrepresentations.

**74.** PIGM was harmed by CHO's deception including *inter alia*:

    a. By being induced into and paying 1.1 million USD to CHO.

    b. By being induced into entering into the FRAUDULENT AGREEMENT.

    c. By being induced to entering into the BUSINESS AGREEMENT.

    d. By being induced to entering into with CHO the SUPPLY CONTRACT.

    e. By being induced into entering into the INDEMNIFICATION AGREEMENT.

**75.** As a proximate result of Cho's fraud, PIGM has suffered damages and losses in amounts subject to proof at trial.

## FIFTH CAUSE OF ACTION: FRAUD

**76.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

**77.** CHO misrepresented to PIGM the terms and conditions of the TRUE PURCHASE PRICE and/or actively prevented PIGM from discovering the terms and conditions of the TRUE PURCHASE PRICE.

78. In presenting to PIGM the FRAUDULENT AGREEMENT, CHO knew that the terms and conditions of the FRAUDULENT AGREEMENT contained a FRAUDULENT PURCHASE PRICE which was different from the TRUE AGREEMENT'S TRUE PURCHASE PRICE.

79. CHO intended to induce PIGM's reliance.

80. PIGM justifiably relied upon CHO's misrepresentations.

81. PIGM was harmed by CHO's deception including *inter alia*:

   a. By being induced into and paying 1.1 million USD to CHO.
   b. By being induced into entering into the FRAUDULENT AGREEMENT.
   c. By being induced to entering into the BUSINESS AGREEMENT.
   d. By being induced to entering into with CHO the SUPPLY CONTRACT.
   e. By being induced into entering into the INDEMNIFICATION AGREEMENT.

82. As a proximate result of Cho's fraud, PIGM has suffered damages and losses in amounts subject to proof at trial.

## SIXTH CAUSE OF ACTION: FRAUD

83. PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

84. CHO misrepresented to PIGM the terms and conditions of the TRUE CLOSING DATE and/or actively prevented PIGM from discovering the terms and conditions of the TRUE CLOSING DATE.

85. In presenting to PIGM the FRAUDULENT AGREEMENT, CHO knew that the terms and conditions of the FRAUDULENT AGREEMENT contained a FRAUDULENT CLOSING DATE which was different from the TRUE AGREEMENT'S TRUE CLOSING DATE.

86. CHO intended to induce PIGM's reliance.

**87.** PIGM justifiably relied upon CHO's misrepresentations.

**88.** PIGM was harmed by CHO's deception including *inter alia*:

    a.  By being induced into and paying 1.1 million USD to CHO.

    b.  By being induced into entering into the FRAUDULENT AGREEMENT.

    c.  By being induced to entering into the BUSINESS AGREEMENT.

    d.  By being induced to entering into with CHO the SUPPLY CONTRACT.

    e.  By being induced into entering into the INDEMNIFICATION AGREEMENT.

**89.** As a proximate result of Cho's fraud, PIGM has suffered damages and losses in amounts subject to proof at trial.

## SEVENTH CAUSE OF ACTION: FRAUD

**90.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

**91.** When he transmitted the FORGED DEAL DOCUMENT 1 to JEONG/PIGM on or about June 28, 2022, CHO used the FORGED DEAL DOCUMENTS in furtherance of his concealment of the TRUE AGREEMENT, the TRUE PURCHASE PRICE, the TRUE CLOSING DATE, and in furtherance of and recapitulation of his misrepresentations to JEONG/PIGM of the FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE *inter alia* by:

    • Reiterating the terms of the FRAUDULENT AGREEMENT

    • Reiterating the FRAUDULENT PURCHASE PRICE of $23,250,000.00

    • Reiterating the FRAUDUENT CLOSING DATE of August 31, 2022

**92.** When he transmitted the FORGED DEAL DOCUMENT 1 to JEONG/PIGM on or about June 28, 2022, JEONG/PIGM justifiably relied upon CHO's misrepresentations that the FORGED DEAL DOCUMENTS were true, authentic, and formed the agreement between CHO and STARTS for the purchase of the PROPERTY, and reinforced

JEONG/PIGM's reliance on CHO that the FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE were true and correct.

93. In justifiable reliance on CHO's misrepresentations that the FORGED DEAL DOCUMENT 1 was true, authentic, and formed the agreement between CHO and STARTS for the purchase of the PROPERTY, and JEONG/PIGM's reliance on CHO that FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE were true and correct was reconfirmed by the FORGED DEAL DOCUMENTS and ongoing concealment and misrepresentations by CHO, JEONG/PIGM were induced to:

   a. On or about August 18, 2022, wired to CHO the sum of $400,000.00 toward the FRAUDULENT PURCHASE PRICE and for the FRAUDULENT CLOSING DATE.
   b. Entering into the BUSINESS AGREEMENT.
   c. Entering into with CHO the SUPPLY CONTRACT.
   d. Entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.
   e. Entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.
   f. Entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.
   g. Entering into the INDEMNIFICATION AGREEMENT.

94. PIGM was harmed by CHO's deception including *inter alia*:

   a. By being induced into and paying 1.1 million USD to CHO.
   b. By being induced into entering into the FRAUDULENT AGREEMENT.
   c. By being induced to entering into the BUSINESS AGREEMENT.
   d. By being induced to entering into with CHO the SUPPLY CONTRACT.
   e. By being induced to entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.
   f. By being induced to entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.

g. By being induced to entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.

h. By being induced into entering into the INDEMNIFICATION AGREEMENT.

**95.** As a proximate result of Cho's fraud, PIGM has suffered damages and losses in amounts subject to proof at trial.

**EIGHTH CAUSE OF ACTION: FRAUD**

**96.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

**97.** When he transmitted the FORGED DEAL DOCUMENT 2 to JEONG/PIGM on or about June 28, 2022, CHO used the FORGED DEAL DOCUMENTS in furtherance of his concealment of the TRUE AGREEMENT, the TRUE PURCHASE PRICE, the TRUE CLOSING DATE, and in furtherance of and recapitulation of his misrepresentations to JEONG/PIGM of the FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE *inter alia* by:

- Reiterating the terms of the FRAUDULENT AGREEMENT
- Reiterating the FRAUDULENT PURCHASE PRICE of $23,250,000.00
- Reiterating the FRAUDUENT CLOSING DATE of August 31, 2022

**98.** When he transmitted the FORGED DEAL DOCUMENT 2 to JEONG/PIGM on or about June 28, 2022, JEONG/PIGM justifiably relied upon CHO's misrepresentations that the FORGED DEAL DOCUMENTS were true, authentic, and formed the agreement between CHO and STARTS for the purchase of the PROPERTY, and reinforced JEONG/PIGM's reliance on CHO that the FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE were true and correct.

99. In justifiable reliance on CHO's misrepresentations that the FORGED DEAL DOCUMENT 2 was true, authentic, and formed the agreement between CHO and STARTS for the purchase of the PROPERTY, and JEONG/PIGM's reliance on CHO that FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE were true and correct was reconfirmed by the FORGED DEAL DOCUMENTS and ongoing concealment and misrepresentations by CHO, JEONG/PIGM were induced to:

   a. On or about August 18, 2022, wired to CHO the sum of $400,000.00 toward the FRAUDULENT PURCHASE PRICE and for the FRAUDULENT CLOSING DATE.
   b. Entering into the BUSINESS AGREEMENT.
   c. Entering into with CHO the SUPPLY CONTRACT.
   d. Entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.
   e. Entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.
   f. Entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.
   g. Entering into the INDEMNIFICATION AGREEMENT.

100. PIGM was harmed by CHO's deception including *inter alia*:

   a. By being induced into and paying 1.1 million USD to CHO.
   b. By being induced into entering into the FRAUDULENT AGREEMENT.
   c. By being induced to entering into the BUSINESS AGREEMENT.
   d. By being induced to entering into with CHO the SUPPLY CONTRACT.
   e. By being induced to entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.
   f. By being induced to entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.
   g. By being induced to entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.
   h. By being induced into entering into the INDEMNIFICATION AGREEMENT.

101. As a proximate result of Cho's fraud, PIGM has suffered damages and losses in amounts subject to proof at trial.

**NINTH CAUSE OF ACTION: FRAUD**

102. PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

103. When he transmitted the FORGED DEAL DOCUMENT 3 to JEONG/PIGM on or about June 28, 2022, CHO used the FORGED DEAL DOCUMENTS in furtherance of his concealment of the TRUE AGREEMENT, the TRUE PURCHASE PRICE, the TRUE CLOSING DATE, and in furtherance of and recapitulation of his misrepresentations to JEONG/PIGM of the FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE *inter alia* by:

- Reiterating the terms of the FRAUDULENT AGREEMENT
- Reiterating the FRAUDULENT PURCHASE PRICE of $23,250,000.00
- Reiterating the FRAUDUENT CLOSING DATE of August 31, 2022

104. When he transmitted the FORGED DEAL DOCUMENT 3 to JEONG/PIGM on or about June 28, 2022, JEONG/PIGM justifiably relied upon CHO's misrepresentations that the FORGED DEAL DOCUMENTS were true, authentic, and formed the agreement between CHO and STARTS for the purchase of the PROPERTY, and reinforced JEONG/PIGM's reliance on CHO that the FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE were true and correct.

105. In justifiable reliance on CHO's misrepresentations that the FORGED DEAL DOCUMENT 3 was true, authentic, and formed the agreement between CHO and STARTS for the purchase of the PROPERTY, and JEONG/PIGM's reliance on CHO

that FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE were true and correct was reconfirmed by the FORGED DEAL DOCUMENTS and ongoing concealment and misrepresentations by CHO, JEONG/PIGM were induced to:

    a.   On or about August 18, 2022, wired to CHO the sum of $400,000.00 toward the FRAUDULENT PURCHASE PRICE and for the FRAUDULENT CLOSING DATE.

    b.   Entering into the BUSINESS AGREEMENT.

    c.   Entering into with CHO the SUPPLY CONTRACT.

    d.   Entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.

    e.   Entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.

    f.   Entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.

    g.   Entering into the INDEMNIFICATION AGREEMENT.

**106.**   PIGM was harmed by CHO's deception including *inter alia*:

    a.   By being induced into and paying 1.1 million USD to CHO.

    b.   By being induced into entering into the FRAUDULENT AGREEMENT.

    c.   By being induced to entering into the BUSINESS AGREEMENT.

    d.   By being induced to entering into with CHO the SUPPLY CONTRACT.

    e.   By being induced to entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.

    f.   By being induced to entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.

    g.   By being induced to entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.

    h.   By being induced into entering into the INDEMNIFICATION AGREEMENT.

**107.**   As a proximate result of Cho's fraud, PIGM has suffered damages and losses in amounts subject to proof at trial.

## TENTH CAUSE OF ACTION: FRAUD

**108.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

**109.** When he transmitted the FORGED DEAL DOCUMENT 4 to JEONG/PIGM on or about June 28, 2022, CHO used the FORGED DEAL DOCUMENTS in furtherance of his concealment of the TRUE AGREEMENT, the TRUE PURCHASE PRICE, the TRUE CLOSING DATE, and in furtherance of and recapitulation of his misrepresentations to JEONG/PIGM of the FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE *inter alia* by:

- Reiterating the terms of the FRAUDULENT AGREEMENT
- Reiterating the FRAUDULENT PURCHASE PRICE of $23,250,000.00
- Reiterating the FRAUDUENT CLOSING DATE of August 31, 2022

**110.** When he transmitted the FORGED DEAL DOCUMENT 4 to JEONG/PIGM on or about June 28, 2022, JEONG/PIGM justifiably relied upon CHO's misrepresentations that the FORGED DEAL DOCUMENTS were true, authentic, and formed the agreement between CHO and STARTS for the purchase of the PROPERTY, and reinforced JEONG/PIGM's reliance on CHO that the FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE were true and correct.

**111.** In justifiable reliance on CHO's misrepresentations that the FORGED DEAL DOCUMENT 4 was true, authentic, and formed the agreement between CHO and STARTS for the purchase of the PROPERTY, and JEONG/PIGM's reliance on CHO that FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE were true and correct was reconfirmed by the

FORGED DEAL DOCUMENTS and ongoing concealment and misrepresentations by CHO, JEONG/PIGM were induced to:

a. On or about August 18, 2022, wired to CHO the sum of $400,000.00 toward the FRAUDULENT PURCHASE PRICE and for the FRAUDULENT CLOSING DATE.
b. Entering into the BUSINESS AGREEMENT.
c. Entering into with CHO the SUPPLY CONTRACT.
d. Entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.
e. Entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.
f. Entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.
g. Entering into the INDEMNIFICATION AGREEMENT.

**112.** PIGM was harmed by CHO's deception including *inter alia*:

a. By being induced into and paying 1.1 million USD to CHO.
b. By being induced into entering into the FRAUDULENT AGREEMENT.
c. By being induced to entering into the BUSINESS AGREEMENT.
d. By being induced to entering into with CHO the SUPPLY CONTRACT.
e. By being induced to entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.
f. By being induced to entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.
g. By being induced to entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.
h. By being induced into entering into the INDEMNIFICATION AGREEMENT.

**113.** As a proximate result of Cho's fraud, PIGM has suffered damages and losses in amounts subject to proof at trial.

**ELEVENTH CAUSE OF ACTION: FRAUD**

**114.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

**115.** When he transmitted the FORGED DEAL DOCUMENT 5 to JEONG/PIGM on or about June 28, 2022, CHO used the FORGED DEAL DOCUMENTS in furtherance of his concealment of the TRUE AGREEMENT, the TRUE PURCHASE PRICE, the TRUE CLOSING DATE, and in furtherance of and recapitulation of his misrepresentations to JEONG/PIGM of the FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE *inter alia* by:

- Reiterating the terms of the FRAUDULENT AGREEMENT
- Reiterating the FRAUDULENT PURCHASE PRICE of $23,250,000.00
- Reiterating the FRAUDUENT CLOSING DATE of August 31, 2022

**116.** When he transmitted the FORGED DEAL DOCUMENT 5 to JEONG/PIGM on or about June 28, 2022, JEONG/PIGM justifiably relied upon CHO's misrepresentations that the FORGED DEAL DOCUMENTS were true, authentic, and formed the agreement between CHO and STARTS for the purchase of the PROPERTY, and reinforced JEONG/PIGM's reliance on CHO that the FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE were true and correct.

**117.** In justifiable reliance on CHO's misrepresentations that the FORGED DEAL DOCUMENT 5 was true, authentic, and formed the agreement between CHO and STARTS for the purchase of the PROPERTY, and JEONG/PIGM's reliance on CHO that FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE were true and correct was reconfirmed by the FORGED DEAL DOCUMENTS and ongoing concealment and misrepresentations by CHO, JEONG/PIGM were induced to:

a. On or about August 18, 2022, wired to CHO the sum of $400,000.00 toward the FRAUDULENT PURCHASE PRICE and for the FRAUDULENT CLOSING DATE.

b. Entering into the BUSINESS AGREEMENT.

c. Entering into with CHO the SUPPLY CONTRACT.

d. Entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.

e. Entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.

f. Entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.

g. Entering into the INDEMNIFICATION AGREEMENT.

118. PIGM was harmed by CHO's deception including *inter alia*:

a. By being induced into and paying 1.1 million USD to CHO.

b. By being induced into entering into the FRAUDULENT AGREEMENT.

c. By being induced to entering into the BUSINESS AGREEMENT.

d. By being induced to entering into with CHO the SUPPLY CONTRACT.

e. By being induced to entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.

f. By being induced to entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.

g. By being induced to entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.

h. By being induced into entering into the INDEMNIFICATION AGREEMENT.

119. As a proximate result of Cho's fraud, PIGM has suffered damages and losses in amounts subject to proof at trial.

## TWELTH CAUSE OF ACTION: INTENTIONAL MISREPRESENTATION

120. PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

121. CHO concealed and misrepresented to PIGM the TRUE AGREEMENT.

122. CHO had knowledge of the falsity.

**123.** CHO intended to induce PIGM's reliance.

**124.** PIGM justifiably relied upon CHO's deception.

**125.** PIGM was harmed and damaged including:

    a. By being induced into and paying 1.1 million USD to CHO.

    b. By being induced into entering into the FRAUDULENT AGREEMENT.

    c. By being induced to entering into the BUSINESS AGREEMENT.

    d. By being induced to entering into with CHO the SUPPLY CONTRACT.

    e. By being induced to entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.

    f. By being induced to entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.

    g. By being induced to entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.

    h. By being induced into entering into the INDEMNIFICATION AGREEMENT.

**126.** As a proximate result of Cho's intentional misrepresentations, PIGM has suffered damages and losses in amounts subject to proof at trial.

**THIRTEENTH CAUSE OF ACTION: INTENTIONAL MISREPRESENTATION**

**127.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

**128.** CHO concealed and misrepresented to PIGM the TRUE PURCHASE PRICE.

**129.** CHO had knowledge of the falsity.

**130.** CHO intended to induce PIGM's reliance.

**131.** PIGM justifiably relied upon CHO's deception.

**132.** PIGM was harmed and damaged including:

    a. By being induced into and paying 1.1 million USD to CHO.

    b. By being induced into entering into the FRAUDULENT AGREEMENT.

    c. By being induced to entering into the BUSINESS AGREEMENT.

      d. By being induced to entering into with CHO the SUPPLY CONTRACT.

      e. By being induced to entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.

      f. By being induced to entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.

      g. By being induced to entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.

      h. By being induced into entering into the INDEMNIFICATION AGREEMENT.

**133.** As a proximate result of Cho's intentional misrepresentations, PIGM has suffered damages and losses in amounts subject to proof at trial.

**FOURTEENTH CAUSE OF ACTION: INTENTIONAL MISREPRESENTATION**

**134.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

**135.** CHO concealed and misrepresented to PIGM the TRUE CLOSING DATE.

**136.** CHO had knowledge of the falsity.

**137.** CHO intended to induce PIGM's reliance.

**138.** PIGM justifiably relied upon CHO's deception.

**139.** PIGM was harmed and damaged including:

      a. By being induced into and paying 1.1 million USD to CHO.

      b. By being induced into entering into the FRAUDULENT AGREEMENT.

      c. By being induced to entering into the BUSINESS AGREEMENT.

      d. By being induced to entering into with CHO the SUPPLY CONTRACT.

      e. By being induced to entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.

      f. By being induced to entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.

      g. By being induced to entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.

h. By being induced into entering into the INDEMNIFICATION AGREEMENT.

**140.** As a proximate result of Cho's intentional misrepresentations, PIGM has suffered damages and losses in amounts subject to proof at trial.

**FIFTEENTH CAUSE OF ACTION: INTENTIONAL MISREPRESENTATION**

**141.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

**142.** In presenting the FRAUDULENT AGREEMENT to PIGM, CHO concealed and misrepresented to PIGM the TRUE AGREEMENT.

**143.** CHO had knowledge of the falsity.

**144.** CHO intended to induce PIGM's reliance.

**145.** PIGM justifiably relied upon CHO's deception.

**146.** PIGM was harmed and damaged including:

    a. By being induced into and paying 1.1 million USD to CHO.
    b. By being induced into entering into the FRAUDULENT AGREEMENT.
    c. By being induced to entering into the BUSINESS AGREEMENT.
    d. By being induced to entering into with CHO the SUPPLY CONTRACT.
    e. By being induced to entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.
    f. By being induced to entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.
    g. By being induced to entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.
    h. By being induced into entering into the INDEMNIFICATION AGREEMENT.

**147.** As a proximate result of Cho's intentional misrepresentations, PIGM has suffered damages and losses in amounts subject to proof at trial.

## SIXTEENTH CAUSE OF ACTION: INTENTIONAL MISREPRESENTATION

**148.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

**149.** In presenting the FRAUDULENT PURCHASE PRICE to PIGM, CHO concealed and misrepresented to PIGM the TRUE PURCHASE PRICE.

**150.** CHO had knowledge of the falsity.

**151.** CHO intended to induce PIGM's reliance.

**152.** PIGM justifiably relied upon CHO's deception.

**153.** PIGM was harmed and damaged including:

 a. By being induced into and paying 1.1 million USD to CHO.
 b. By being induced into entering into the FRAUDULENT AGREEMENT.
 c. By being induced to entering into the BUSINESS AGREEMENT.
 d. By being induced to entering into with CHO the SUPPLY CONTRACT.
 e. By being induced to entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.
 f. By being induced to entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.
 g. By being induced to entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.
 h. By being induced into entering into the INDEMNIFICATION AGREEMENT.

**154.** As a proximate result of Cho's intentional misrepresentations, PIGM has suffered damages and losses in amounts subject to proof at trial.

## SEVENTEENTH CAUSE OF ACTION: INTENTIONAL MISREPRESENTATION

**155.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

**156.** In presenting the FRAUDULENT CLOSING DATE to PIGM, CHO concealed and misrepresented to PIGM the TRUE CLOSING DATE.

**157.** CHO had knowledge of the falsity.

**158.** CHO intended to induce PIGM's reliance.

**159.** PIGM justifiably relied upon CHO's deception.

**160.** PIGM was harmed and damaged including:

    a. By being induced into and paying 1.1 million USD to CHO.

    b. By being induced into entering into the FRAUDULENT AGREEMENT.

    c. By being induced to entering into the BUSINESS AGREEMENT.

    d. By being induced to entering into with CHO the SUPPLY CONTRACT.

    e. By being induced to entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.

    f. By being induced to entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.

    g. By being induced to entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.

    h. By being induced into entering into the INDEMNIFICATION AGREEMENT.

**161.** As a proximate result of Cho's intentional misrepresentations, PIGM has suffered damages and losses in amounts subject to proof at trial.

**EIGHTEENTH CAUSE OF ACTION: INTENTIONAL MISREPRESENTATION**

**162.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

**163.** When he transmitted the FORGED DEAL DOCUMENT 1 to JEONG/PIGM on or about June 28, 2022, CHO used the FORGED DEAL DOCUMENTS in furtherance of his concealment of the TRUE AGREEMENT, the TRUE PURCHASE PRICE, the TRUE CLOSING DATE, and in furtherance of and recapitulation of his misrepresentations to JEONG/PIGM of the FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE

**164.** CHO had knowledge of the falsity.

**165.** CHO intended to induce PIGM's reliance.

**166.** PIGM justifiably relied upon CHO's deception.

**167.** PIGM was harmed and damaged including:

    a.  By being induced into and paying 1.1 million USD to CHO.

    b.  By being induced into entering into the FRAUDULENT AGREEMENT.

    c.  By being induced to entering into the BUSINESS AGREEMENT.

    d.  By being induced to entering into with CHO the SUPPLY CONTRACT.

    e.  By being induced to entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.

    f.  By being induced to entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.

    g.  By being induced to entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.

    h.  By being induced into entering into the INDEMNIFICATION AGREEMENT.

**168.** As a proximate result of Cho's intentional misrepresentations, PIGM has suffered damages and losses in amounts subject to proof at trial.

**NINETEENTH CAUSE OF ACTION: INTENTIONAL MISREPRESENTATION**

**169.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

**170.** When he transmitted the FORGED DEAL DOCUMENT 2 to JEONG/PIGM on or about June 28, 2022, CHO used the FORGED DEAL DOCUMENTS in furtherance of his concealment of the TRUE AGREEMENT, the TRUE PURCHASE PRICE, the TRUE CLOSING DATE, and in furtherance of and recapitulation of his misrepresentations to JEONG/PIGM of the FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE.

**171.** CHO had knowledge of the falsity.

**172.** CHO intended to induce PIGM's reliance.

**173.** PIGM justifiably relied upon CHO's deception.

**174.** PIGM was harmed and damaged including:

    a. By being induced into and paying 1.1 million USD to CHO.

    b. By being induced into entering into the FRAUDULENT AGREEMENT.

    c. By being induced to entering into the BUSINESS AGREEMENT.

    d. By being induced to entering into with CHO the SUPPLY CONTRACT.

    e. By being induced to entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.

    f. By being induced to entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.

    g. By being induced to entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.

    h. By being induced into entering into the INDEMNIFICATION AGREEMENT.

**175.** As a proximate result of Cho's intentional misrepresentations, PIGM has suffered damages and losses in amounts subject to proof at trial.

**TWENTIETH CAUSE OF ACTION: INTENTIONAL MISREPRESENTATION**

**176.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

**177.** When he transmitted the FORGED DEAL DOCUMENT 3 to JEONG/PIGM on or about June 28, 2022, CHO used the FORGED DEAL DOCUMENTS in furtherance of his concealment of the TRUE AGREEMENT, the TRUE PURCHASE PRICE, the TRUE CLOSING DATE, and in furtherance of and recapitulation of his misrepresentations to JEONG/PIGM of the FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE

**178.** CHO had knowledge of the falsity.

**179.** CHO intended to induce PIGM's reliance.

**180.** PIGM justifiably relied upon CHO's deception.

**181.** PIGM was harmed and damaged including:

    a. By being induced into and paying 1.1 million USD to CHO.

    b. By being induced into entering into the FRAUDULENT AGREEMENT.

    c. By being induced to entering into the BUSINESS AGREEMENT.

    d. By being induced to entering into with CHO the SUPPLY CONTRACT.

    e. By being induced to entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.

    f. By being induced to entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.

    g. By being induced to entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.

    h. By being induced into entering into the INDEMNIFICATION AGREEMENT.

**182.** As a proximate result of Cho's intentional misrepresentations, PIGM has suffered damages and losses in amounts subject to proof at trial.

**TWENTY-FIRST CAUSE OF ACTION: INTENTIONAL MISREPRESENTATION**

**183.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

**184.** When he transmitted the FORGED DEAL DOCUMENT 4 to JEONG/PIGM on or about June 28, 2022, CHO used the FORGED DEAL DOCUMENTS in furtherance of his concealment of the TRUE AGREEMENT, the TRUE PURCHASE PRICE, the TRUE CLOSING DATE, and in furtherance of and recapitulation of his misrepresentations to JEONG/PIGM of the FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE.

**185.** CHO had knowledge of the falsity.

**186.** CHO intended to induce PIGM's reliance.

**187.** PIGM justifiably relied upon CHO's deception.

**188.** PIGM was harmed and damaged including:

a. By being induced into and paying 1.1 million USD to CHO.

b. By being induced into entering into the FRAUDULENT AGREEMENT.

c. By being induced to entering into the BUSINESS AGREEMENT.

d. By being induced to entering into with CHO the SUPPLY CONTRACT.

e. By being induced to entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.

f. By being induced to entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.

g. By being induced to entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.

h. By being induced into entering into the INDEMNIFICATION AGREEMENT.

**189.** As a proximate result of Cho's intentional misrepresentations, PIGM has suffered damages and losses in amounts subject to proof at trial.

**TWENTY-SECOND CAUSE OF ACTION: INTENTIONAL MISREPRESENTATION**

**190.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

**191.** When he transmitted the FORGED DEAL DOCUMENT 5 to JEONG/PIGM on or about June 28, 2022, CHO used the FORGED DEAL DOCUMENTS in furtherance of his concealment of the TRUE AGREEMENT, the TRUE PURCHASE PRICE, the TRUE CLOSING DATE, and in furtherance of and recapitulation of his misrepresentations to JEONG/PIGM of the FRAUDULENT AGREEMENT, the FRAUDULENT PURCHASE PRICE, and the FRAUDULENT CLOSING DATE.

**192.** CHO had knowledge of the falsity.

**193.** CHO intended to induce PIGM's reliance.

**194.** PIGM justifiably relied upon CHO's deception.

**195.** PIGM was harmed and damaged including:

a. By being induced into and paying 1.1 million USD to CHO.

b. By being induced into entering into the FRAUDULENT AGREEMENT.

c. By being induced to entering into the BUSINESS AGREEMENT.

d. By being induced to entering into with CHO the SUPPLY CONTRACT.

e. By being induced to entering into with CHO Addendum A to the FRAUDULENT AGREEMENT.

f. By being induced to entering into with CHO Addendum B to the FRAUDULENT AGREEMENT.

g. By being induced to entering into with CHO Addendum C to the FRAUDULENT AGREEMENT.

h. By being induced into entering into the INDEMNIFICATION AGREEMENT.

**196.** As a proximate result of Cho's intentional misrepresentations, PIGM has suffered damages and losses in amounts subject to proof at trial.

### TWENTY-THIRD CAUSE OF ACTION: RESCISSION

**197.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 196 as though fully set forth here.

**198.** In or around June 2023, PIGM discovered *inter alia* CHO's wrongful conduct, unlawful conduct, illegality, fraud, concealment, misrepresentations, forgeries, and misappropriation of HATA's identity.

**199.** In or around June 2023, PIGM rescinded promptly when PIGM asserted to CHO that PIGM deemed the FRAUDULENT AGREEMENT, INDEMNIFICATION AGREEMENT, and other agreements to be invalid and demanded that CHO return the 1.1 million USD PIGM transmitted to him.

**200.** Rescission is proper pursuant to 20 G.C.A. § 3240(1) and 18 G.C.A. § 89203(1) on the grounds of (a) fraudulent concealment pled in Causes of Action 1-3; (b) fraud pled in Causes of Action 4-11; and (c) misrepresentation pled in Causes of Action 12-22.

**201.** Additionally, and/or alternatively, rescission is proper pursuant to 20 G.C.A. 3240(2) first, on the grounds of illegality by CHO including: (a) theft in violation of 9 G.C.A. § 43.30; (b) theft by deception in violation of 9 G.C.A. § 43.35; (c) theft of property held in trust in violation of 9 G.C.A. § 43.60; (d) forgery in violation of 9 G.C.A. § 46.10; (e) federal wire fraud in violation of 18 U.S.C. § 1343; and (f) federal aggravated identity theft in violation of 18 U.S.C. § 1028A; and second, PIGM was not at fault.

**202.** Pursuant to its rescission request, PIGM is entitled to:

    a. Restoration of the 1.1 million USD PIGM paid to CHO plus interest.
    b. Rescission of the FRAUDULENT AGREEMENT including Addenda A-C.
    c. Rescission of the BUSINESS AGREEMENT.
    d. Rescission of the SUPPLY AGREEMENT.
    e. Rescission of the INDEMNIFICATION AGREEMENT.

## TWENTY-FOURTH CAUSE OF ACTION: CANCELLATION OF INSTRUMENTS

**203.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 196 as though fully set forth here.

**204.** The following instruments are the product of CHO's wrongful conduct, unlawful conduct, illegality, fraud, concealment, misrepresentations, forgeries, and misappropriation of HATA's identity and are void or voidable:

    a. FRAUDULENT AGREEMENT including Addenda A-C.
    b. BUSINESS AGREEMENT.
    c. SUPPLY AGREEMENT.
    d. INDEMNIFICATION AGREEMENT.

**205.** There is a serious apprehension that if left outstanding, these written instruments may cause serious injury to PIGM.

**206.** PIGM requests that these written instruments be ordered and adjudged cancelled pursuant to *inter alia* 20 G.C.A. § 3250.

## TWENTY-FIFTH CAUSE OF ACTION: CONVERSION

**207.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 47 as though fully set forth here.

**208.** PIGM's payment of 1.1 million USD was premised on the validity of the FRAUDULENT AGREEMENT.

**209.** As the FRAUDULENT AGREEMENT was the product of CHO's wrongful conduct, unlawful conduct, illegality, fraud, concealment, misrepresentations, forgeries, and/or misappropriation of HATA's identity, CHO was never entitled to receive or retain those funds.

**210.** Additionally, and/or alternatively, CHO promised PIGM that all funds paid by PIGM to CHO for the purchase of the PROPERTY would be deposited by CHO in an escrow account.

**211.** CHO had a legal obligation to deposit the 1.1 million USD paid by PIGM to CHO in an escrow account.

**212.** CHO instead treated the 1.1 million USD as his own and failed to deposit said funds in whole or in part in an escrow account.

**213.** PIGM as the owner of the 1.1 million USD had and continues to have a right to possession of said funds.

**214.** CHO had and has no legal right to retain those funds and treat them as his own.

**215.** PIGM did not and does not consent to CHO treating those funds as his own.

**216.** Since discovering CHO's wrongful conduct, unlawful conduct, illegality, fraud, concealment, misrepresentations, forgeries, and/or misappropriation of HATA's identity, PIGM did not and does not now consent to CHO's retention or disposition of any portion of said funds.

**217.** PIGM has suffered damages in the amount of no less than 1.1 million USD plus interest and other relief prayed for herein.

### TWENTY-SIXTH CAUSE OF ACTION: PARTNERSHIP BREACH OF FIDUCIARY DUTIES

**218.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 217 as though fully set forth here.

**219.** Additionally, and/or alternatively, to the extent CHO asserts the parties intended to purchase the PROPERTY as partners, or that a partnership relationship existed between CHO and PIGM, CHO had fiduciary duties of honesty, loyalty, care, and good faith to PIGM. CHO's fiduciary duties to PIGM also included but were not limited to rendering true and full information and accountings of all things affecting the partnership.

**220.** CHO breached his fiduciary duties to PIGM.

**221.** As a proximate result of CHO's breaches of fiduciary duties to PIGM, PIGM has suffered damages and losses in amounts subject to proof at trial.

### TWENTY-SEVENTH CAUSE OF ACTION: BROKERAGE BREACH OF FIDUCIARY DUTIES

**222.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 217 as though fully set forth here.

**223.** Additionally, and/or alternatively, to the extent CHO acted as a broker for PIGM, and/or received or claimed entitlement to a broker or real estate agent commission, CHO as a broker or real estate agent had fiduciary duties of honesty, loyalty, care, diligence, and good faith to PIGM. CHO's fiduciary duties to PIGM also included but were not limited to making full disclosures to PIGM of all material facts, to act in the interest of PIGM, and to refrain from self-dealing.

**224.** CHO breached his fiduciary duties to PIGM.

**225.** As a proximate result of CHO's breaches of fiduciary duties to PIGM, PIGM has suffered damages and losses in amounts subject to proof at trial.

**TWENTY-EIGHTH CAUSE OF ACTION: PUNITIVE DAMAGES**

**226.** PIGM realleges and incorporates by this reference all allegations contained in paragraphs 1 through 225 as though fully set forth here.

**227.** CHO's conduct was committed with malice, oppression, or fraud, or in violation of his fiduciary duties to PIGM, entitling PIGM to an award of punitive damages in amounts of no less than 5.5 million US dollars.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of six (6) persons on all issues that may be tried as a matter of right by a jury.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff requests judgment against DEFENDANTS as follows:

1. Restoration of the 1.1 million USD PIGM paid to CHO, by CHO to PIGM, plus pre and post judgment interest.

2. Rescission of the following contracts: (a) FRAUDULENT AGREEMENT (May 7, 2022, Commercial Property Purchase Agreement and Joint Escrow Instructions including Addenda A-C), (b) June 16, 2022, BUSINESS AGREEMENT, (c) June 16, 2022, SUPPLY CONTRACT, (d) January 2023, INDEMNIFICATION AGREEMENT.

3. Cancellation of the following contracts: (a) FRAUDULENT AGREEMENT (May 7, 2022, Commercial Property Purchase Agreement and Joint Escrow Instructions including Addenda A-C), (b) June 16, 2022, BUSINESS AGREEMENT, (c) June 16, 2022, SUPPLY CONTRACT, (d) January 2023, INDEMNIFICATION AGREEMENT.

4. Economic and non-economic damages in amounts subject to proof at trial.

5. General, compensatory, and consequential damages in amounts subject to proof at trial.

6. Punitive damages in amounts of no less than 5.5 million US dollars.

7. Plaintiff's attorney's fees.

8. Plaintiff's costs of suit.

9. For such other and further relief deemed by the Court to be just and proper.

Respectfully submitted this 25th day of July, 2024.

LAW OFFICE OF PETER C. PEREZ

By: _____
PETER C. PEREZ, ESQ.
*Counsel for Plaintiff*